**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERICK JAMES JONES,** | : | |
| **Appellant,** | : | **CIVIL ACTION NO. 3:25-1741** |
| **v.** | : | **(JUDGE MANNION)** |
| **SANTANDER BANK, N.A.,** | : | |
| **Appellee.** | : | |

## MEMORANDUM

Before the Court is Erick James Jones's ("Appellant"), appeal of Bankruptcy Court's September 12, 2025 order granting Santander Bank's ("Appellee") motion for relief from automatic stay *nunc pro tunc*. (Doc. 1); (Doc. 173, 5:24-bk-03068-MJC ("Bankruptcy Doc. 173")). Because the Court does not detect any error in the record below, Appellant's appeal will be **DENIED**, and the Bankruptcy Court's order will be **AFFIRMED**.

## I. BACKGROUND

This matter arises out of a mortgage action filed by Appellee in the New Jersey Superior Court with respect to the residential property located at 1144 Williams Street, Hamilton Township, Mercer County, New Jersey 08610 (the "Property"). (Doc. 12 at 1). On November 13, 2014, the Property owner, Clinton Jones, Sr., executed a home equity line of credit agreement in favor of Appellee, with a credit limit of $39,000, and secured repayment with a

mortgage on the Property. (Bankruptcy Doc. 115). The mortgage was recorded in Mercer County, New Jersey on December 10, 2014. *Id.*

Clinton Jones, Sr. died intestate on March 14, 2021. (Bankruptcy Doc. 115-2. Thereafter, a default occurred under the terms of the mortgage agreement on February 9, 2022, and a foreclosure action followed on September 9, 2022. *Id.* Because no estate had yet been opened, the defendants named in the foreclosure were Clinton Jones, Sr.'s known and unknown heirs (including Appellant), junior lienholders, and creditors. *Id.*

On November 1, 2022, Appellant filed an answer to the foreclosure complaint, which was later stricken, and summary judgment was granted to Appellee on September 8, 2023. *Id.* Appellant filed a motion for reconsideration of the order granting summary judgment, which was denied on October 23, 2023. *Id.*

A sheriff's sale of the Property was scheduled for August 21, 2024. (Doc. 12 at 2). After two motions of third-party Samantha Capozzi, who represented that she was going to seek appointment as executor of Clinton Jones, Sr.'s estate, the sheriff's sale for the Property was held on December 11, 2024. (Bankruptcy Doc. 115-4). Third-party bidder, Sharing & Caring, Inc., purchased the property. (Bankruptcy Doc. 115-5). Appellee avers that

no appeals were taken from any of the orders entered in the foreclosure action. (Doc. 12 at 3).

On November 27, 2024, Appellant filed Chapter 13 Bankruptcy. *Id.* On December 17, 2024, six days after the Sheriff's Sale, Appellant filed a "petition to stay any and all liens, sales or other acts that may be pending." (Bankruptcy Doc. 17). Appellant only served the petition upon the Mercer County Sheriff's Department—not Appellee, nor its counsel. *Id.* at 2. After a hearing held on December 19, 2024, Bankruptcy Judge Mark J. Conway denied the petition without prejudice. (Bankruptcy Doc. 20).

On December 30, 2024, Appellant filed a "petition to stay and make void any sale or other acts that may be pending" against the Property and another property located at 4022 North Darien Street, Philadelphia, Pennsylvania 19111. (Bankruptcy Doc. 27). Appellant served this petition upon the Mercer County Sheriff's Department, and counsel for Appellee. *Id.* at 3. While the second petition was pending, Judge Conway dismissed Appellant's Bankruptcy for his failure to file a complete list of creditors. (Docs. 24, 30).

On January 13, 2025, Appellant filed a creditor list—the Bankruptcy was subsequently reinstated on January 22, 2025. (Bankruptcy Docs. 33, 39). According to Appellee, the January 13, 2025 creditor list was the first

Bankruptcy document identifying Appellee as an interested party. (Doc. 12 at 3). On February 13, 2025, Judge Conway denied Appellant's "petition to stay and make void any sale or other acts that may be pending" (Bankruptcy Doc. 27) because Appellant failed to appear for argument. (Bankruptcy Doc. 46).

On February 18, 2025, Appellant filed a "motion to vacate and void a foreclosure sale of certain real property conducted by [Appellee] and to award actual and punitive damages for [Appellee's] willful violation of the automatic stay pursuant to 11 U.S.C. [§]362 or in the alternative treat the motion as one pursuant to Rule 60(B)[.]" (Bankruptcy Doc. 48). After a hearing held on March 18, 2025, Judge Conway denied the motion. (Bankruptcy Doc. 70).

On February 25, 2025, the Trustee filed another Motion to Dismiss Bankruptcy due to Appellant's failure to file a Chapter 13 plan pursuant to Bankruptcy Rule 3015(b)(1). (Bankruptcy Doc. 56). Appellant filed a Chapter 13 Plan on March 17, 2025; however, the Trustee objected to the plan because, *inter alia*, it had not been served on the creditors, including Appellee. (Bankruptcy Doc. 77). Judge Conway sustained the objection on May 1, 2025, after Appellant failed to appear for a confirmation hearing. (Bankruptcy Doc. 108).

On April 24, 2025, Appellant filed a "motion for relief pursuant to Rule[ ] 362(K) of [the] bankruptcy code to have this honorable court vacate a foreclosure sale of certain property and award actual and punitive damages for the willful violation of the automatic stay[.]" (Bankruptcy Doc. 102). On May 9, 2025, Appellant filed a "motion requesting ex parte ruling seeking the return of real property." (Bankruptcy Doc. 113). Judge Conway denied both motions, noting that Appellant was seeking the same or similar relief as motions already denied. (Doc. 126).

On March 24, 2025, Appellant filed an Adversary Proceeding ("AP") complaint to determine whether Appellee "breached a required term of the [underlying] agreement" with Clinton Jones, Sr. (Doc. 1, 5:25-ap-00015-MJC ("AP Doc. 1")). Three days later, Judge Conway determined that the AP complaint was procedurally deficient and ordered Appellant to file an amended complaint. (AP Doc. 5). Appellant's amended complaint, however, was also procedurally deficient—accordingly, Judge Conway directed Appellant to file a second amended complaint. (AP Doc. 17). Because Appellant did not file a second amended complaint, Judge Conway dismissed the AP cause of action on May 22, 2025. (AP Doc. 19).

On May 16, 2025, Appellee filed a "motion seeking relief from the automatic stay *nunc pro tunc* or, in the alternative, annulment of stay, and

dismissal of the debtor's adversary proceeding." (Bankruptcy Doc. 115). The motion sought:

> [A]n entry of an order vacating the automatic stay nunc pro tunc to Appellant's bankruptcy filing date, thus validating the actions taken after the bankruptcy was filed including, without limitation, the Sheriff's Sale of the NJ Property conducted by the Mercer County Sheriff on January 3, 2025, thus allowing the Sheriff's Deed in favor of the successful third-party bidder, S&C, to be recorded without further delay[.]

*Id.* at 13. In response, Appellant filed an objection to Appellee's "challenge to bankruptcy petition and request for relief from automatic stay[.]" (Bankruptcy Doc. 127). On September 9, 2025, the court held an evidentiary hearing on Appellee's motion for relief, *id.*; and Appellant's (1) "motion for contempt[,]" (Bankruptcy Doc. 135); (2) motion to "join additional defendants and second motion for contempt[,]" (Bankruptcy Doc. 150); and (3) "motion to add additional issues of objections regarding violations of New Jersey Law on notice of foreclosure and [. . .] redemption rights and notice[,]" (Bankruptcy Doc. 152). (Bankruptcy Docs. 168-171). Judge Conway granted Appellee's motion for relief and denied Appellant's three motions. (Bankruptcy Docs. 173-176).

On September 18, 2025, this Court received Appellant's notice of appeal. (Doc. 1). On December 1, 2025, Appellant filed an untimely brief in

support of his appeal. (Doc. 7); *see also* (Doc. 3) (ordering Appellant to file a brief within thirty days). On April 15, 2026, Appellee filed its brief in opposition. (Doc. 12). On April 22, 2026, Appellant filed his reply brief. (Doc. 13). This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

This Court has appellate jurisdiction over Appellant's appeal of the Bankruptcy Court's order pursuant to 28 U.S.C. §158(a)(1). *Id.* (The district court has "jurisdiction to hear appeals from final judgments, orders, and decrees" of a bankruptcy court.); *see In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) ("[A] district court sits as an appellate court to review a bankruptcy court."). When a district court sits as an appellate court over a final order of a bankruptcy court, it reviews the bankruptcy court's legal determinations *de novo*, its findings of fact for clear error, and its exercise of discretion for abuse of discretion. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998); *see also In re Zinchiak*, 406 F.3d 214, 221-22 (3d Cir. 2005) (explaining that the district court reviews "the Bankruptcy Court's findings of fact for clear error and exercises plenary review over the Bankruptcy Court's legal determinations.").

A factual finding is clearly erroneous only if it "either is completely devoid of minimum evidentiary support displaying some hue of credibility or

bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (internal quotations omitted). Findings supported by the record are not clearly erroneous, even if the record could support a different conclusion. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). When reviewing for clear error, "it does not matter that this Court 'would have reached a different conclusion' if presented with the matter in the first instance." *Campbell v. Conway*, 611 B.R. 38, 43 (M.D.Pa. 2020) (quoting *Prusky v. ReliaStar Life Ins.*, 532 F.3d 252, 258 (3d Cir. 2008)). The Court must accept the Bankruptcy Court's factual findings unless it is "left with the definite and firm conviction that a mistake has been committed." *Id.*

"[I]ssues within the equitable discretion of a bankruptcy court should be overturned only for abuse of discretion." *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 F. App'x 565, 568 (3d Cir. 2004). Evidentiary decisions are also reviewed for abuse of discretion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997) ("All evidentiary decisions are reviewed under an abuse-of-discretion standard."). A court abuses its discretion when it "bases its opinion on a clearly erroneous finding of fact, an

erroneous legal conclusion, or an improper application of law to fact." *Prosser v. Gerber (In re Prosser)*, 777 F.3d 154, 161 (3d Cir. 2015) (internal quotation marks omitted). As a result, "[u]nder the deferential abuse of discretion standard," the bankruptcy court's decision is only reversed when it "is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the [bankruptcy] court's view." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotations omitted).

## III. DISCUSSION

Appellant's appeal challenges Judge Conway's order granting Appellee's relief from the automatic stay with respect to the Property. (Docs. 1, 1-1). Appellant's challenges are summarily related to: (1) standing, (2) due process, or (3) 11 U.S.C. §362.

### A. Standing

Appellant argues that (1) Appellee did not have standing to seek relief from the automatic stay, (2) that the "Bankruptcy Court never addressed standing at all," and (3) that Appellee was "improperly permitted to argue for the rights of a non-party purchaser, violating . . . standing." (Doc. 7 at 6-7). We address each argument in turn.

Appellant first argues that Appellee did not have standing to seek relief from the automatic stay. (Doc. 7 at 8). Specifically, Appellant claims that because Appellee sold the property on December 11, 2024, it was no longer a creditor or a party in interest. *Id.*

To have standing to foreclose a mortgage in New Jersey, a party generally must "own or control the underlying debt." *Bank of N.Y. v. Raftogianis*, 13 A.3d 435, 438 (N.J.Super. 2010). Because Appellee was the holder of the mortgage, (Doc. 2-1 at 28), it had standing to foreclose the mortgage under New Jersey law. As aptly noted by Appellee:

> While [Appellant] has challenged [Appellee]'s standing to pursue relief from the automatic stay, he has predicated that challenge on the fact that the Property was sold to a third party at [s]heriff's [s]ale and not on the validity of the underlying [a]greement or [m]ortgage, [Appellee]'s status as mortgagee, or [Appellee]'s right to have pursued the [f]oreclosure.

(Doc. 12 at 10). To have Article III standing to sue, a plaintiff must (1) have suffered or be imminently threatened with a concrete and particularized injury in fact; (2) that is fairly traceable to the challenged action of the defendant; and (3) likely to be redressed by a favorable judicial decision. U.S. CONST. Art. 3, § 2, cl. 1. All three of these elements are present. Appellee risked financial loss of the defaulted debt based upon

Appellant's bankruptcy filing and the resulting automatic stay. Judge Conway redressed this risk by providing Appellee relief from the automatic stay.

More specific to the bankruptcy setting, however, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay[.]" 11 U.S.C. §362(d). "Although the Code does not define 'party in interest,' the phrase is usually held to apply to anyone whose monetary interests would be affected by the proceeding." *In re Wilton Armetale, Inc.*, 618 B.R. 424, n. 2 (Bankr.E.D.Pa. 2020). As the mortgagor, Appellee's monetary interests would be affected by the automatic stay—therefore, the Bankruptcy Court did not abuse its discretion in finding that Appellee had standing to bring the underlying motion for relief.

Appellant next argues that the "Bankruptcy Court failed to address or rule on standing at all." (Doc. 7 at 10). This assertion is patently untrue. The Bankruptcy Court explicitly stated in its order that "[Appellee] ha[d] standing to bring this Motion as it was a secured creditor of the NJ Property as of the Petition Date and [Appellant] ha[d] made claims against [Appellee] relating to the propriety of the sale and would be considered a party in interest under §1109(b)." (Bankruptcy Doc. 173 at 2, n. 1). Not only did the Bankruptcy

Court rule on standing, it provided more than necessary rationale to detail the basis for its findings.

Appellant's final standing-related argument is that Appellee was "improperly permitted to argue for the rights of a non-party purchaser, violating . . . standing." (Doc. 7 at 6). However, Appellant fails to indicate any point at which the Appellee asserted rights of a third-party. Rather, Appellant cites to the entirety of the September 9, 2025 transcript, effectively requiring this Court to go on an expedition to find a scintilla of evidence in support of his claim. Even after a complete review of the transcript, this Court fails to identify any representations made by Appellee that could be interpreted as arguing the rights of Sharing & Caring; in fact, Appellee explicitly stated "We are not representing [Sharing & Caring][.]" (Doc. 7-2 at 5).

Finding no errors, we affirm the Bankruptcy Court on all issues related to standing.

**B. Due Process**

Appellant next argues that Appellee failed to notify the Sheriff's Department of Property heirs, and that the Bankruptcy Court failed to consider the merits of this due process claim. (Doc. 7 at 7, 11). However, once again, the testimony offered at the September 9, 2025 hearing evidences the contrary.

At the hearing, Appellee's counsel, Attorney Barbara Fein, stated:

> In New Jersey, the defendant list on a foreclosure is everybody and everything that has an interest or potential interest in the property. So the original complaint was the estate, or known and unknown heirs of Clinton Jones, Sr., and then all of the heirs and their spouses . . . The process in New Jersey is you name all the interested or possibly interested parties and their creditors, too. In this instance, there's a long list . . . And then you have to go through the process of having final judgment entered against them. So in New Jersey, you have to serve everybody. Then you give them the notice that you're going to default them. You default them. And then you file an actual motion with the court to have a final judgment and writ issued. It's not an administrative process. It's an actual final judgment. And then you wait for that to get entered. And once that's entered, and the writ issues, you can schedule a sheriff's sale.

(Doc. 7-2 at 9-12). The discussion continued:

> THE COURT: . . . But is [Appellant], is he listed . . . as a defendant?
>
> MS. FEIN: Yes.
>
> THE COURT: Throughout the whole state process?
>
> MS. FEIN: Absolutely. And he was served.
>
> THE COURT: And he was served?
>
> MS. FEIN: He file[d] an answer to the complaint.
>
> THE COURT: In state court.

> MS. FEIN: Um-hum . . . The final judgment order was entered on September 8th, 2023, . . . And the Court would not enter it if people hadn't been served. They love to kick it back if somebody hasn't been served.

*Id.* at 13-14.

Judge Conway stated: the "sheriff's sale process, as Ms. Fein indicated, and she has documents to support attached to her motion for relief, indicate that the process seems to have gone through like every other sheriff's sale . . . It didn't – what I have seen is nothing remarkable or out of line." *Id.* at 17-18. Accordingly, the Bankruptcy Court made a factual finding that Appellant and the other heirs were served. Because we are not "left with the definite and firm conviction that a mistake has been committed," we decline to disturb the Bankruptcy Court's factual findings and affirm. *Campbell*, 611 B.R. at 43.

**C. 11 U.S.C. §362**

Finally, Appellant argues that because Appellee admitted that it received notice of the bankruptcy on January 23, 2025, it willfully violated 11 U.S.C. §362. (Doc. 7 at 7). However, this argument fails as a matter of law.

§362(A) states:

> **(a)** Except as provided in subsection (b) of this section, **a petition filed under section 301, 302, or 303 of this title, or**

**an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay,** applicable to all entities, of--

> **(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> **(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> **(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> **(4)** any act to create, perfect, or enforce any lien against property of the estate;
>
> **(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

> **(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
>
> **(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. §362(A) (emphasis added). The inquiry turns on whether Appellant had an active bankruptcy filing at the time of sale. Here, the sheriff's sale occurred on December 11, 2024. Appellant originally filed for bankruptcy on November 27, 2024. (Bankruptcy Doc. 1). However, at the September 9, 2025 hearing, Appellant admitted that he did not notify any parties at the time of filing because he had not yet submitted his creditors list. (Doc. 7-2 at 97). In order for a voluntary bankruptcy case to be deemed filed, a debtor must include a list of creditors. *See* FRBP 1007.

Appellant also admitted that he did not file to stop the Sheriff's Department. *Id.* at 98. Appellant nonetheless argued that he notified the Sheriff's Department that he filed for bankruptcy protection prior to the sale, but the Bankruptcy Court found that this claim was undermined by the evidence. (Doc. 7-2 at 127). "[T]he first time that [Appellant] submitted

anything to the [S]heriff's [D]epartment was December 12[, 2024.]" (Doc. 7-2 at 96). Appellee cannot have willfully violated 11 U.S.C. §362 if the bankruptcy petition was incomplete.

In addition, in New Jersey, "[a] sheriff's sale is automatically confirmed after ten days without an objection being filed." *Brookshire Equities, LLC v. Montaquiza*, 787 A.2d 942, 945 (N.J.Super. 2002) (citing *Hardyston National Bank v. Tartamella,* 56 *N.J.* 508, 511 (1970)). "Filing a petition of bankruptcy under Chapter 13 does not constitute an objection to the sale." *Brookshire Equities, LLC*, 787 A.2d at 946 (citing *Union County Savings Bank v. Johnson,* 210 *N.J.Super.* 589, 594 (Ch.Div. 1986)). Moreover, "[t]here must . . . be some valid ground for objection. Examples of valid grounds for objection include fraud, accident, surprise, irregularity, or impropriety in the sheriff's sale." *Brookshire Equities, LLC*, 787 A.2d at 946 (internal citations omitted).

Here, the bankruptcy petition was not properly filed until January 22, 2025. (Bankruptcy Doc. 39). Therefore, even if bankruptcy filing constituted an objection to the sale, it occurred well outside the relevant period. Moreover, although Appellant filed a "petition to stay any and all liens, sales or other acts that may be pending," (Bankruptcy Doc. 17), within six days of the sale, the Bankruptcy Court found that the petition was procedurally

deficient because Appellant once again only served the Mercer County Sheriff—not Appellee nor its counsel. (Bankruptcy Doc. 20). The record is otherwise devoid of any evidence that Appellant filed a valid objection within the ten-day period.

For these reasons, we find that as a matter of law, Appellee cannot have violated 11 U.S.C. §362 and affirm the Bankruptcy Court.

**D. *Nunc Pro Tunc* Relief**

We last consider whether the Bankruptcy Court abused its discretion when granting Appellee's motion. When deciding if *nunc pro tunc* relief from an automatic bankruptcy stay is permitted, courts consider: "(1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced." *In re Meyers*, 491 F.3d 120, 130 (3d Cir. 2007). After its September 9, 2025 hearing, the Bankruptcy Court found that all three factors were met: Appellee was not aware of the bankruptcy at the time of the sheriff's sale, Appellant acted unreasonably by failing to notify the parties about his bankruptcy filing prior

to the sheriff's sale,[1] and Appellee would be prejudiced if it had to "undo sheriff's sale and a sale to a third party[.]" (Doc. 7-2 at 129).

We cannot say that the court's determination was an abuse of discretion, "particularly given the wide latitude accorded to the Bankruptcy Court to balance the equities when granting relief from the automatic stay." *In re Meyers*, 491 F.3d at 130. Accordingly, the Bankruptcy Court will be affirmed.

## IV. CONCLUSION

Based on a careful review of the record below, the Court finds that the Bankruptcy Court's order granting Appellee's motion for relief from automatic

---

[1] Judge Conway stated: "I think . . . the only reason you filed was to stop what's going on with the sheriff sale." (Doc. 7-2 at 97). *See also id.* at 125-129 ("As of December 11, 2024, when the sheriff's sale was consummated and sold to a third party, there was no proper notice of the bankruptcy. I'm not sure why you would not have done that, [Appellant], but I don't see any proper notice. I don't see anything in a docket anywhere. I don't see any certificate of service anywhere. In your bankruptcy case, you did not even list [Appellee] to receive notice from this Court. What would have been very good evidence for you, quite frankly, is to have a certificate of service to Santander out of this Court, which is what most . . . people . . . trying to avoid a sheriff's sale would do.").

stay *nunc pro tunc* (Bankruptcy Doc. 173) was proper and should not be disturbed. The appeal will be **DENIED**. An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 7/31/26
25-1741-01